IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

Future Die Cast Acquisitions, Inc.,

Debtor.

Chapter 11
Case No. 18-46210-MAR
Hon. Mark A. Randon

## MOTION OF THE HUNTINGTON NATIONAL BANK
## TO CONVERT THE CASE TO CHAPTER 7

The Huntington National Bank ("Bank") files this Motion to Convert the Case to Chapter 7 ("Motion"), seeking entry of an order, the form of which is attached at Exhibit 1, and in support of the Motion states as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. Venue is proper under 28 U.S.C. § 1409. The Motion is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

### SUMMARY OF REQUESTED RELIEF

2. Bank seeks to have the case converted to Chapter 7 of the United States Code, 11 U.S.C. § 101, *et seq.* (as amended, "Bankruptcy Code").

### CURRENT POSTURE OF THE
### BANKRUPTCY CASE

3. As of the Petition Date, Debtor was indebted to Bank for loans of more than $5,200,000. Bank has timely filed a proof of claim for $5,200,746.63 (Claim No. 28-1).

4. The indebtedness of Debtor to Bank is secured by all personal property of Debtor.

## FACTUAL BACKGROUND

5. At the First Day hearing on May 2, 2018 on the Debtor's motion for use of cash collateral, Debtor represented to the Court that it would be presenting to the Court a motion for a sale of Debtor's assets for $3,500,000 to a stalking horse bidder, subject to higher and better offers, that such sale was forthcoming, and that the sale could close by mid-June 2018.

6. The Sale Procedures Motion filed on May 14, 2018 [DN 34] was nothing at all similar to the promised sale efforts.

7. Instead of a $3,500,000 stalking horse bid, Debtor instead proposed a naked auction with a minimum bid of $1,000,000 less than was represented to the Court and creditors at the May 2, 2018 hearing.

8. On June 4, 2018, Debtor filed a sale motion for the lesser, proposed sale. Debtor then failed to deliver a purchase agreement for the reduced promised price, continuing a trend started prepetition.

9. On June 22 2018, Debtor withdrew the sale motion because it had no buyers.

10. Debtor failed to engage any professionals to market and sell its assets. Based on extensive prepetition and postpetition experience with Debtor, Bank is without confidence that the debtor in possession is competent to market the Debtor's business or to lead a sale process to conclusion.

11. Upon stipulation with Debtor and FCA US LLC, Bank agreed to extend through August 16, 2018 the use of cash collateral under a budget supported by FCA. FCA was by far Debtor's largest customer.

12. On July 30, 2018, FCA notified Debtor of termination of production of parts by Debtor for FCA, demanded return to FCA of Tooling, and filed a motion for relief from the

automatic stay to recover the Tooling. The motion was heard and granted on Monday, August 6, 2018.

13. Upon information and belief, Debtor is without material new business needed to maintain operations, and replace FCA as a customer.

14. Debtor's authority to use cash collateral expired on August 16, 2018.

15. Debtor is without funding for new business, in any event.

16. On August 28, 2018, the Court issued an order to Debtor requiring it to appear on September 17, 2018 at 11:00 a.m. and show cause why this case should not be dismissed.

17. Bank requests that this case be converted, rather than dismissed. Conversion would be in the best interest of creditors.

## AUTHORITY

18. Under Section 1112(b) of the United States Bankruptcy Code ("Code")[1], the Court on request of a party in interest shall convert a case for cause including fraud, dishonesty, incompetence or gross mismanagement, if such conversion is in the best interests of creditors.

19. Section 1112(b)(1) in pertinent part provides:

"(1) Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever in in the best interest of creditors and the estate, for cause unless the court determines that the appointment under 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate."

The exceptions to the obligation to convert are not applicable in this case.

20. Section 1112(b)(4) provides a non-exhaustive list of sixteen reasons for "cause for conversion". *In re Forum Health*, 444 B.R. 848, 855 (N.D. Ohio 2011), *In re Fall*, 405 B.R. 863,

---

[1] Unless otherwise noted, references to sections in this motion are references to the Code.

-3-
18-46210-mar    Doc 126    Filed 09/05/18    Entered 09/05/18 15:53:17    Page 3 of 8
Detroit_15592021_8

867 (N.D. Ohio 2009), and *Collier on Bankruptcy*, 1112.04[6] (16th Ed.). Section 1112(b)(1) establishes the alternative of appointment of a chapter 11 trustee in lieu of conversion if in the best interests of creditors and the estates.

21. The list of sixteen reasons for cause in Section 1112(b)(4) includes at least two that are applicable in this case:

> "(A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation; and
>
> (B) gross mismanagement of the estate."

22. Under §1112(b) "cause" for conversion or dismissal is not limited to the circumstances described in §1112(b)(4) because, by virtue of §101(3) of the Code, the use of the word "including" in §1112(b) does not limit "cause" to the enumerated statutory grounds. See *In re Great Am. Pyramid Joint Venture*, 144 B.R. 780, 790 (Bankr. W.D. Tenn. 1992).

### A. Losses, Diminution of the Estate and Absence of a Reasonable Likelihood Rehabilitation under §1112(b)(4)(A)

23. Section 1112(b)(4)(A) provides that "cause" includes "(1) substantial or continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation . . . ." Thus, relief under § 1112(b)(1) implicates two inquiries both of which require conversion here.

#### I. Substantial Loss or Diminution of the Estate

24. The first inquiry under § 1112(b)(4)(A) tests whether Debtor experienced negative cash flow or declining asset values post-petition. It is satisfied where the moving party shows that debtor does not have a positive cash flow or the value of its assets declined in an economic sense since the petition date. *In re Citi-Toledo Partners*, 170 B.R. 602, 606 (N.D. Ohio 1994) (accrual of property taxes and idling of construction project diminishes the estate);

*In re Schroick Constr. Inc.*, 167 B.R. 569, 575 (D.N.D. 1994) (where debtor operated at a loss 11 months postpetition conversion was proper), and *Collier on Bankruptcy*, 1112.04[6] (16th Ed.).

25. Here, Debtor commenced the case promising a $3,500,000 stalking horse offer. That offer was reduced by $1,000,000 almost immediately, to $2,500,000. Then, Debtor failed to deliver even that. Subsequently, Debtor has lost its largest customer. Debtor is not capable of providing adequate protection and has no ability to operate without business from FCA.

### I. Debtor has no reasonable hope for rehabilitation.

26. The second inquiry under § 1112(b)(4)(A), which provides that Debtor must be absent a reasonable likelihood of rehabilitation, examines whether there is a reasonable likelihood that debtor's losses can be stemmed and it can gain solid financial footing in a reasonable amount of time. *In re Citi-Toledo Partners,* 170 B.R. at 606. Rehabilitation and reorganization are not the same. *Id* at 607. This inquiry focuses on whether debtor has or can formulate a reasonable and detailed business plan within a reasonable period of time. *Collier on Bankruptcy*, 1112.04[6] (16th Ed.). The second test is satisfied when the movant shows that the causes of debtor's losses cannot be corrected or that neither debtor or another party is capable of performing the rehabilitation. *Id.*

27. Visionary or impracticable schemes for resuscitation are insufficient and warrant the granting of relief. *Tennessee Publishing Co. v. America Nat'l Bank*, 299 U.S. 18, 22 (1930); *In re Great Am Pyramid Joint Venture*, 144 B.R. 780, 791 (W.D. Tenn. 1992).

28. Here, Debtor is incapable of replacing the FCA business and formulating a reasonable business plan.

29. Debtor has demonstrated a lack of understanding and control of its financial needs and obligations.

30. Debtor has demonstrated a lack of ability to market and sell the assets of Debtor despite repeated promises to do so. Upon information and belief, a large part of that failure is a result of the importance to Debtor's principal that the outcome include, for him personally, a soft landing and future opportunities.

**B.  Gross Mismanagement of the Estate**

31. The case should be converted because since the petition date, Debtor has grossly mismanaged assets of the estate.

32. A debtor in possession owes a fiduciary duty to its creditors and gross mismanagement may be found notwithstanding debtor's management's best intentions. *In re Gateway Access Solutions, Inc.* 374 B.R. 556, 565 (M.D. PA. 2007).

33. Debtor has been unable to market its assets as promised.

34. Debtor has lost its major customer.

35. After FCA's termination of, and exit from, production by Debtor, Debtor then proposed an offer from a third party which had sought to buy the Debtor's assets several years ago, when Debtor's principal did so. Apparently, that prospective purchaser had not been contacted by Debtor during the prior marketing efforts despite its prior interest. After that late introduction to the potential purchase, it declined to proceed because Debtor had declined in value so much. The potential offeror lamented that it was contacted so late and before it could act and preserve value.

36. It is apparent that Debtor's principal's personal goals are contrary to his obligations as debtor in possession. Indeed, even now he continues to suggest to Bank reduced, low offers to purchase the assets himself or for his personal benefit. Further, Debtor's principal's actions are impaired by his desire to challenge his personal exposure to Bank, and the potential

foreclosure of his or his spouse's other pledged assets. He is a party in pending litigation with Bank.

C. **No Unusual Circumstances**

37. Once "cause" is found to exist, appointment of a trustee or dismissal or conversion is mandatory, unless (with regard to conversion) there exists "unusual circumstances" or the conditions set forth in § 1112(b)(2) are present. Neither situation exists in this matter. Debtor is unable to manage its operations or finances, does not have the ability to market assets and has grossly mismanaged the estate. Debtor is not capable of providing adequate protection to Bank. Any business plan or sale of the business presented now by Debtor would likewise have a very low probability of fruition and cannot be given much credibility.

38. Someone else should begin managing or liquidating this Debtor other than its principal. Debtor cannot or will not do so effectively, and has many conflicts. Dismissal will not solve this dilemma for creditors. The Debtor has lost the bulk (or all) of its business, has no ability to continue operations and provide adequate protection to Bank, and has no likelihood of rehabilitation.

39. Conversion is warranted under § 1112(b)(1) and would be in the best interest of creditors.

## RELIEF REQUESTED

Bank requests that the Court convert the case to Chapter 7. A proposed order is attached as Exhibit 1.

                          BODMAN PLC

                          By: /s/ Marc M. Bakst
                          Marc M. Bakst (P41575)
                          J. Adam Behrendt (P58607)
                          Attorneys for The Huntington National Bank
                          1901 St. Antoine Street
                          6th Floor at Ford Field
                          Detroit, Michigan 48226
                          (313) 259-7777
                          *mbakst@bodmanlaw.com*

September 5, 2018        *abehrendt@bodmanlaw.com*